TERRY *v.* LITTLE.

TERRY *v.* LEMAY.

Opinion delivered July 1, 1929.

*Busbee, Pugh & Harrison* and *McCaleb & McCaleb,* for appellant.

*Cunningham & Cunningham,* for appellee.

BUTLER, J. The cases named in the caption were consolidated in the circuit court for the purpose of trial, and, as consolidated, have been brought to this court on appeal. For convenience this court will consider first case, No. 1020, W. E. Lemay and A. D. Little v. E. L. Terry and Southern Surety Company, the defendants in the court below being the appellants here.

E. L. Terry was engaged, in the year 1927, as a general contractor, in building certain roads between Alicia, Arkansas, and Tuckerman, Arkansas. A. D. Little was employed as subcontractor on said road, and did certain dirt work in building a dump, and also did some day work on the road. The Southern Surety Company was the surety on the bond of E. L. Terry, and obligated itself, by the terms of the bond, to insure the payment of the work and material done or furnished. W. E. Lemay seems to have been engaged in furnishing supplies to the subcontractor, A. D. Little, and to other subcontractors, and in the case of Little there was an agreement between Little, Lemay and Terry that the latter was to pay to Lemay the amounts due Little, and Little executed an assignment of the amount due him to Lemay. After the

completion of the work which Little had agreed to do, Lemay and Little brought suit against Terry and his surety, the Southern Surety Company, for the balance alleged to be due of $859.04, and incorporated in their complaint the following statement:

| | |
|---|---|
| "Balance yardage not paid for in June | $125.00 |
| Yardage held back, 2,041 yds. at 20c | 408.20 |
| 2,500 yards at 2c extra | 50.00 |
| Overhaul, 6,832 yds., at 2c | 136.64 |
| Ten per cent. extra for completed work | 132.40 |
| Team and wagon without driver, 30 hours | 7.50 |
| Total | $859.04" |

The defendant Terry moved the trial court that the plaintiffs be required to file an itemized and verified account, alleging that the statement filed was insufficient in that it failed to show each separate item of work claimed to have been done or material furnished, the dates of same, *et cetera*. The court overruled the motion, to which action the defendant excepted. The defendant Terry then filed a demurrer to the complaint, which was overruled, and thereupon he filed his answer, and motion to transfer the case to the chancery court. The motion to transfer to chancery was overruled, and the case was submitted to the court sitting as a jury, who, after having heard the testimony, rendered judgment in favor of the plaintiff for the sum of $7.50 against the defendant Terry and for an additional sum of $560.56 against the defendants E. L. Terry and the Southern Surety Company.

The appellants, as ground for reversal, insist that the court erred in refusing to require appellees to file an itemized and verified account of the claim sued on, and also that it was error for the court to refuse to transfer the case to equity, and because the court allowed judgment for the item of $125 for "balance of yardage not paid for in June."

The court is of the opinion that the statement of the items in the complaint was sufficient, and that no additional information was necessary to apprise defendants

of the nature of plaintiff's claim, especially because the very information sought was at their command (*Brooks* v. *International Shoe Co.*, 132 Ark. 386, 200 S. W. 1027), and that there was no such involved or complicated account as would make a transfer to chancery and the appointment of a master necessary. *Cherry* v. *Kirkland,* 138 Ark. 33, 210 S. W. 344; *McGraw. Perkins & Webber Co.* v. *Yates,* 175 Ark. 298, 298 S. W. 1001. The evidence, while confused and unsatisfactory, was sufficient to show that there was practically no dispute as to the amount and character of the work done or the price agreed upon, the question being whether the work on the Little contract was paid for; but the appellees do not challenge the sufficiency of the testimony. From the judgment rendered it is evident that the court reduced the amount of plaintiff's claim, and we are unable to determine what particular item it rejected, so that it might have been that the item of $125 for "balance yardage not paid for in June" was the item excluded. But, even if that were not the case, the complaint was treated as amended to conform to the proof, and there is no allegation of surprise or request for any continuance to meet the change in the issue, so that, in any view of the case, the appellant's third ground for reversal must be rejected. The conclusion of the court is that no reversible error was committed, and that the finding and judgment of the trial court should be and the same is hereby in all things affirmed.

We next consider case No. 1019, E. L. Terry and Southern Surety Co. v. W. E. Lemay. For his cause of action W. E. Lemay, in his original complaint, alleged that the defendant Terry was a general contractor, building State Road No. 67 between the towns of Swifton and Tuckerman, in Jackson County, Arkansas, and that the defendant employed the teams of plaintiff, known as "three-up teams," at the rate of 75 cents per hour per team for 417 hours, and that he was due for this the sum of $312.75, which was past due and unpaid. The defendant Terry moved the court to require the plaintiff to file an itemized and verified account of the claim sued on,

which motion was overruled, and exceptions duly saved by the defendant.

After cases No. 1019 and 1020 were consolidated, the plaintiff Lemay in this case filed an amended complaint making the same allegations as in his original complaint, with the addition of the words "and drivers" after the words "three up-teams," and also alleged that the Southern Surety Company was bound on its bond for the payment of this item, and exhibited a copy of the bond with his amended complaint. To this amended complaint the defendant Southern Surety Company demurred, and it and the defendant Terry filed their separate answers. Upon the issues thus joined the case was submitted to the court sitting as a jury, and a judgment was rendered in favor of the plaintiff and against both defendants for the sum sued for.

It is urged on the part of the appellant Terry, first, that the court's refusal to require the appellee to file an itemized account, duly verified as required by law, was prejudicial error, and cites the case of *Brooks* v. *International Shoe Company*, 132 Ark. 386, 200 S. W. 1027, in support of his contention. The accounts in the Brooks case and in the instant case are essentially different. In the Brooks case the account was for merchandise, and contained a number of debit items, presumably for the gross amount of invoices, without setting out the different items; and in the case at bar what is called an account by the appellant is the following statement: "This is to certify that W. E. Lemay has made team time to the amount of 417 hours between October 21 and 31, inclusive, three-up teams, at 75c per hour. This amount is due today for work on Cat-tail road. (Signed) F. M. Eason, foreman and time-keeper." As stated in *Brooks* v. *International Shoe Co., supra,* "the word 'account' is said to have no inflexible, technical meaning, and is differently construed according to the connection in which it is used. However, 'in mercantile transactions it is invariably used in the sense of a detailed or itemized account.' In that case the rule in Sutherland on Code Pleadings, vol.

2, § 2297, was quoted with approval and is as follows: 'The items of the account furnished must be set forth with as much particularity as the nature of the case admits of. A bill of particulars is sufficiently specific if it apprises the opposite party of the evidence to be offered'.''

In the instant case it is evident that Lemay had no information relative to the work done except such as was furnished him by the foreman and time-keeper, so that it was stated with as much particularity as the nature of the transaction would admit, and the party called upon to account is not subjected to the necessity of doing an impracticable thing. Inasmuch as the statement which is the basis of this suit was made by the foreman and time-keeper, it was sufficiently definite to apprise the opposite party of the evidence to be offered, so the court is of the opinion that the case cited by the appellant settles the first assignment of error against him.

Appellant Terry insists, as a second ground for reversal, that there was such a variance between the pleadings and proof as would preclude any recovery by the plaintiff; that the proof shows that Lemay had no right to maintain the action because, if anything was due, it was due to one Little, and, before recovery could be had, Little must have been made a party. The facts are undisputed. Little was the owner of the teams, and had given a mortgage to the appellee Lemay covering them, and, after having completed certain work, he became sick and could not take care of the teams. He turned them over to Lemay, who put them in his pasture and fed them for some time, when Little discovered they could be hired out, and so told Lemay. Lemay sent Little with the teams to the place where the work was to be done. They were put to work, and it was recognized by the contractor that, for the purpose of that transaction, they were Lemay's teams, for the statement is demonstrative of that fact. Lemay was the mortgagee in possession, and it was immaterial whom he sent with the teams to their place of

work, whether Little or any one else, for the person so sent would be merely the agent of Lemay for that purpose. It was unnecessary to make Little a party, and the cases cited are not in point.

The third assignment of error which is pressed in the brief of appellant is that, nothing having been said in the original complaint about any drivers in charge of the teams, it was error for the trial court, over the objection and exception of the defendant, to allow the complaint to be amended during the course of the trial to show that the wages of the drivers were also included in the sum of $312.75 claimed to be due. It may be said, as a matter of common knowledge, that mules do not drive themselves, but it is necessary for some one to be present to control and direct their work, and when the expression "teams" is used and a price per hour has been charged for the use of such teams, this price includes the work of the man as well as the animals. Also the expression "up-teams," among those who do contract. work, such as building roads or levees, has a well-recognized meaning, and includes the animals and the driver. But, if we should be wrong in this assumption, still appellant is in no attitude now to complain, for he does not appear to have been surprised or taken off his guard, as he made no request for a continuance of the case in order to meet the additional allegation of the amended complaint. There is competent testimony to sustain the finding of the court, for it is shown by Little's testimony that the mules were put to work, and Lemay's testimony shows that he took charge of the teams and sent Little to get a job and put them to work to help pay for their feed, and received from the foreman and time-keeper of the appellant a certificate showing that the work was actually done.

The next question presented in this case is the liability of the Southern Surety Company. It contends that there should be no judgment against it, even though the court should hold that a judgment against Terry should stand, for it claims that there was an oral assignment of

the account in this case by Little to Lemay, and that, as Little was a necessary party, no judgment can go against the defendant surety company. We have sufficiently answered this question above.

The question as to whether the appellant surety company is liable under the terms of its bond for the item sued for is the serious one in this case upon which the court is divided. The appellant relies upon the case of *St. L. I. M. & S. R. Co.* v. *Love,* 74 Ark. 528, 86 S. W. 395, and the case of *Goode* v. *Ætna Casualty & Surety Co.,* 178 Ark. 451, 13 S. W. (2d) 6. The majority of the court are able to distinguish between the instant case and the cases above cited. There is a difference in the verbiage of § 8555 of Kirby's Digest, construed in the case of *Railway* v. *Love, supra,* and that used in the bond executed by the appellant company. In the first there is a lien declared in favor of any person "who shall do or perform any work or labor, or cause to be done or performed any work or labor upon, or furnish any materials, machinery, fixtures, or other things, toward the building, *et cetera,* of the railroad, * * * and every person who performs any work of any kind in the construction or repair of any railroad * * * shall have a lien," *et cetera.* The court had in mind and construed that paragraph which reads "or furnish any material, machinery, fixtures, or other things toward the building," *et cetera,* and held, under the rule *ejusdem generis,* that mules were not included within the terms of the statute, as the words, "or other things," in the statute had reference to similar things as those denoted by the preceding words. It will be noted that the bond in the instant case is framed in different language from that of the statute *supra,* the condition being that the surety "shall pay all bills for material and labor entering into the construction of said work, or used in the course of the performance of the work." This bond follows the language of § 67 of act 5 of the Special Acts of 1923, known as the Harrelson Road Law. The words used in

that statute regarding the bonds to be executed are as follows: "Shall contain conditions making it (the contractor) liable for material and labor used in the work."

This act was not expressly repealed by act No. 11 of the Acts of 1927, as § 6 of that act, in speaking of the bonds required, used the following language: "Conditioned as the commissioners may require." As the bond in question was filed with the State Highway Commission, it is evident that the conditions it was then requiring were those stated in the Harrelson Act, and the word *"used"* is of much broader import than any contained in the section of the Digest mentioned. It connotes any means employed for the accomplishment of a purpose and the employment of any instrumentality fitted for its performance, so that, as teams of mules are necessary, under conditions as they now exist, for the construction of highways, the majority of the court has concluded that the language of the bond quoted is broad enough to bring the up-teams used on the highway within its conditions, and for that reason the case from 74 Ark. cited above by the appellant is not in point. The instant case may be distinguished from the case of *Goode* v. *Ætna Casualty & Surety Co., supra,* for in that case the question involved was whether the surety on the bond was liable for feed furnished for the stock used in the work on the highway, while in this case the appellee seeks to recover not only for the labor of the mules, but also for that of the drivers. The laborers' lien statute, providing that "laborers who perform work and labor on any object, material, or property, shall have an absolute lien on such object," etc. (§ 6864, C. & M. Digest), has been held to give a lien on property where one used a wagon and team actually driven by the one who files the claim for labor. *Klondike Lumber Co.* v. *Williams,* 71 Ark. 334, 75 S. W. 854. It follows that the trial court was correct in its judgment, both as to the defendant Terry and the defendant Southern Surety Company, and the judgment is therefore affirmed.

As to the Southern Surety Company, the CHIEF JUSTICE, Mr. Justice SMITH and the writer think no proper distinction can be made between this case and *St. L. I. M. & S. R. Co.* v. *Love,* 74 Ark. 528, 86 S. W. 395, and *Goode* v. *Ætna Casualty & Surety Co.,* 178 Ark. 451, 13 S. W. (2d) 6, by which this case should be ruled, and they therefore dissent from the majority decision.